**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **RE TECH ADVISORS, INC.** | : | |
| | : | |
| **800 W. Broad St., Suite 300** | : | |
| **Falls Church, VA 22046** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. _____** |
| | : | |
| **JOHN M. KLEIN** | : | |
| | : | |
| **2D-11 Estate Nazareth** | : | |
| **St. Thomas, VI 00802** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JDM ASSOCIATES LLC** | : | |
| | : | |
| **c/o Harvard Business Services, Inc.** | : | |
| **as Registered Agent** | : | |
| **16192 Coastal Hwy.** | : | |
| **Lewes, DE 19958** | : | |
| | : | |
| **Defendants.** | : | |

_____

**COMPLAINT**

Plaintiff RE Tech Advisors, Inc., by counsel, submits the following Complaint against Defendants John M. Klein and JDM Associates LLC, and, in support thereof, states as follows:

**SUMMARY OF THE DISPUTE**

1.      Deborah J. Cloutier ("Ms. Cloutier"), the sole owner of Plaintiff RE Tech Advisors, Inc. ("Plaintiff" or "RE Tech"), was involved in litigation with Defendants John M. Klein ("Mr. Klein") and JDM Associates LLC ("JDM") in 2017 and early 2018.

2.      The litigation, wherein JDM and Mr. Klein sued Ms. Cloutier in the United States

Virgin Islands and Ms. Cloutier sued Mr. Klein and JDM in Delaware, ultimately settled on February 4, 2018.

3.      The parties' settlement agreement included a number of contractual obligations owed by JDM and Mr. Klein to Ms. Cloutier's corporation, RE Tech.

4.      JDM and Mr. Klein have materially breached the settlement agreement, and RE Tech now sues for breach of the agreement.

## PARTIES AND JURISDICTION

5.      RE Tech is a corporation formed in the Commonwealth of Virginia, with its principal place of business in the City of Falls Church, Virginia.

6.      Ms. Cloutier is RE Tech's sole shareholder.

7.      Mr. Klein is an individual and resident of the United States Virgin Islands.

8.      JDM is a limited liability company organized in the State of Delaware with its principal place of business in the United States Virgin Islands.

9.      Mr. Klein is JDM's sole member.

10.     JDM has no members who are Virginia residents.

11.     JDM is in dissolution.

12.     As described throughout this Complaint, the actions of JDM and Mr. Klein caused, and continue to cause, harm to RE Tech in this district.

13.     RE Tech, JDM, Mr. Klein, and other persons and entities entered into a "Settlement Agreement, Asset Purchase Agreement, and Mutual Release," effective February 4, 2018.

14.     A true and accurate copy of the Settlement Agreement, Asset Purchase Agreement, and Mutual Release (hereinafter, the "Agreement") is attached hereto as **Exhibit 1**.

15.     The parties to the Agreement entered into a "First Amendment to Settlement Agreement, Asset Purchase Agreement, and Mutual Release," on March 15, 2018.

16.     A true and accurate copy of the First Amendment to Settlement Agreement, Asset Purchase Agreement, and Mutual Release (hereinafter, the "Amendment") is attached hereto as **Exhibit 2**.

17.     Section 17(b) of the Agreement states:

> If a lawsuit, counterclaim, or defense ("Action") is brought or asserted to enforce any provision of this Agreement, and/or pursuant to an alleged breach of the Agreement, each Party specifically agrees to be subject to the personal jurisdiction of the courts of the Commonwealth of Virginia and any federal court located in Virginia, and further agrees to venue in Fairfax County General District Court, Fairfax County Circuit Court, and/or the United States District Court for the Eastern District of Virginia (Alexandria Division).

18.     This lawsuit is brought to enforce provisions of the Agreement and pursuant to breaches of the Agreement.

19.     Mr. Klein and JDM are parties to the Agreement.

20.     Mr. Klein and JDM have, thus, agreed to be subject to personal jurisdiction in Virginia, and, further, agreed to venue in this district.

21.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that the amount in controversy exceeds the sum or value of $75,000 and the controversy is between citizens of different states.

22.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS CENTRAL TO ALL COUNTS

### JDM's formation

23.        JDM was organized on April 7, 2005.

24.        JDM had two members when it was organized: Mr. Klein and Ms. Cloutier.

25.        Throughout the time period wherein both Mr. Klein and Ms. Cloutier were JDM members, Mr. Klein owned 51% of the membership interest in JDM and Ms. Cloutier owned 49% of the ownership interest in JDM.

26.        JDM did not, at any time prior to February 4, 2018, have a written limited liability company agreement.

27.        Through October 30, 2017, Ms. Cloutier managed JDM's City of Falls Church office.

28.        Mr. Klein has, since JDM's organization, managed JDM's St. Thomas office.

29.        JDM was a consulting firm, with much of its work consisting of providing sustainability and efficiency consulting services to the federal government, non-profit entities such as trade associations, and public and private entities in the commercial real estate sector.

### Everyone sues each other in 2017

30.        Conflicts between Mr. Klein and Ms. Cloutier arose in 2016 and into 2017.

31.        Ms. Cloutier, on October 20, 2017, sent Mr. Klein a letter detailing her concerns about Mr. Klein's handling of JDM's financial affairs and the various ways in which Mr. Klein appeared, to Ms. Cloutier, to be evading taxes and thereby potentially harming JDM.

32.        Ms. Cloutier's October 20, 2017 letter sought JDM records and information pursuant to 6 Del. C. § 18-305.

33.      A true and accurate copy of the Ms. Cloutier's October 20, 2017 letter to Mr. Klein is attached hereto as **Exhibit 3**.

34.      Ms. Cloutier's October 20, 2017 letter stated, "I very much look forward to your prompt provision of the demanded records. I will expect them on or before October 30, 2017."

35.      Mr. Klein, on October 31, 2017, filed a lawsuit against Ms. Cloutier in the Superior Court of the Virgin Islands, case no. ST-17-CV-421 (hereinafter the "United States Virgin Islands lawsuit").

36.      The lawsuit was preemptive in that Mr. Klein sued Ms. Cloutier because he believed that she was about to sue him.

37.      Mr. Klein caused the United States Virgin Islands lawsuit to be brought against Ms. Cloutier by Mr. Klein, personally, and JDM.

38.      JDM and Mr. Klein alleged, in Paragraph 1 of the United States Virgin Islands lawsuit, that "Plaintiff JDM Associates, LLC ('JDM') is a Delaware formed Limited Liability Company, registered to do business in the U.S. Virgin Islands where it maintains its principal place of business."

39.      Ms. Cloutier moved to dismiss the United States Virgin Islands lawsuit.

40.      Ms. Cloutier, on November 6, 2017, sued Mr. Klein and JDM in the Delaware Court of Chancery (the "Delaware lawsuit").

41.      Ms. Cloutier sought, in the Delaware lawsuit, various forms of relief, including JDM's judicial dissolution.

42.      Ms. Cloutier, on November 9, 2017, filed a Motion for Status Quo Order, Appointment of a Receiver, and Expedited Proceedings.

43.      Mr. Klein opposed the Motion for Status Quo Order, Appointment of a Receiver, and Expedited Proceedings.

44.      A telephonic hearing occurred on November 17, 2017 wherein counsel for Ms. Cloutier and counsel for Mr. Klein argued the Motion for Status Quo Order, Appointment of a Receiver, and Expedited Proceedings.

45.      Vice Chancellor Laster of the Delaware Court of Chancery, at the conclusion of the November 17, 2017 hearing, granted in part and denied in part Ms. Cloutier's Motion for Status Quo Order, Appointment of a Receiver, and Expedited Proceedings.

46.      Vice Chancellor Laster also found, at the November 17, 2017 hearing, that JDM should be judicially dissolved.

47.      Vice Chancellor Laster, on November 27, 2017, over Mr. Klein's objection, entered an Order of Dissolution dissolving JDM.

48.      A true and accurate copy of the November 27, 2017 Order of Dissolution is attached hereto as **Exhibit 4**.

49.      Mr. Klein sought reconsideration of the Order of Dissolution.

50.      The Superior Court of the Virgin Islands, on November 28, 2017, granted Ms. Cloutier's motion to dismiss and dismissed the United States Virgin Islands lawsuit with prejudice.

51.      Mr. Klein and JDM appealed the dismissal of the United States Virgin Islands lawsuit.

52.      Ms. Cloutier incorporated RE Tech in Virginia on November 30, 2017.

53.      Mr. Klein, JDM, RE Tech, Ms. Cloutier, and other parties entered into the Agreement on February 4, 2018.

**Ms. Cloutier's resignation from JDM**

54.     Pursuant to Agreement Section 2, Ms. Cloutier resigned as a JDM member, with such withdrawal effective as of December 31, 2017.

**Dismissal of the United States Virgin Islands and Delaware lawsuits**

55.     Pursuant to Agreement Section 3, the parties agreed that the November 27, 2017 Order of Dissolution would not be affected by the dismissal of the Delaware lawsuit.

56.     The Parties, pursuant to Agreement Section 11, obtained a Court Order on February 6, 2018 dismissing the Delaware lawsuit with prejudice.

57.     A true and accurate copy of the Delaware Court of Chancery's February 6, 2018 Order is attached hereto as **Exhibit 5**.

58.     The February 6, 2018 Order states, in part, "Nothing about this Order of Dismissal with Prejudice shall moot, serve to withdraw, or otherwise abrogate the Court's November 27, 2017 Order of Dissolution."

59.     The Parties, on February 7, 2018, obtained, pursuant to Agreement Section 11, an Order from the Supreme Court of the Virgin Islands dismissing the appeal taken by JDM and Mr. Klein of the United States Virgin Islands lawsuit.

60.     The Parties, on February 13, 2018, obtained, pursuant to Agreement Section 11, an Order from the Superior Court of the Virgin Islands dismissing the United States Virgin Islands lawsuit with prejudice.

**A discussion, in plain language, of how the Agreement and Amendment
are supposed to work**

61.     As indicated by the Agreement's title, the Agreement, in addition to settling the United States Virgin Islands lawsuit and the Delaware lawsuit, also served as an asset purchase agreement whereby RE Tech bought certain JDM assets, including JDM's contracts with JDM's

clients, such as the federal government.

62.     While the specifics will be addressed below, it is worth previewing, in plain language, the underlying dynamics, overarching themes, and intended mechanics of the asset purchase.

63.     As explained above, JDM was judicially dissolved (dissolution being the process of shutting down, with termination as the process's endpoint).

64.     The Agreement contains a requirement that Mr. Klein complete JDM's dissolution by no later than December 31, 2018. *See* Agreement § 2(b).

65.     With JDM winding down, it made sense for RE Tech to buy most of JDM's assets, including JDM's contracts.

66.     This was an important and material aspect of the Agreement.

67.     Much, though not all, of JDM's revenue was derived from work performed for the federal government, including, in particular, the United States Department of Energy ("DOE").

68.     In order for JDM to perform work for the federal government, it had to possess what is known as a GSA Schedule.

69.     A GSA Schedule is a price list to which any government agency can refer when contemplating awarding a contract to a government contractor.

70.     The Agreement included terms whereby JDM would seek to cause both its GSA Schedule and its contracts with various government agencies (including the DOE) to be novated to RE Tech so that RE Tech could take over performance of JDM's contracts. Agreement § 6(b); Agreement § 6(c).

71.     Unsurprisingly, however, a government contractor may not simply freely assign a government contract to another government contractor.

72.      Instead, there is a relatively complex, and sometimes drawn-out, process for novating a contract.

73.      The federal government must review the proposed novation, and is not required to approve the novation.

74.      Thus, the parties to the Agreement could not simply cause JDM's government contracts to be instantly assigned to RE Tech as of February 4, 2018. Instead, there would be a post-settlement period wherein Mr. Klein, JDM, and RE Tech would be working together to cause JDM's GSA Schedule and federal government contracts to be novated to RE Tech.

75.      JDM could not, during the post-settlement, but pre-novation period, service its contracts with the federal government, including because many of its employees were resigning due to a number of factors, including JDM's dissolution and impending termination.

76.      Thus, the parties agreed that RE Tech would, following settlement, but before the federal government approved the novation(s), take over JDM's work on JDM's DOE contracts. *See* Agreement § 6(f) *and* Amendment § 1 (replacing Agreement § 6(f)).

77.      RE Tech could not, however, directly invoice the federal government for its work, because RE Tech was not in contractual privity with the federal government.

78.      Instead, RE Tech would have to act as JDM's subcontractor. *See id*. RE Tech would perform all of the work on the DOE contracts, JDM would be paid for that work, and RE Tech would receive its payment from JDM, not the federal government. *See id*.

79.      Only after the novation of JDM's GSA Schedule and federal government contracts to RE Tech occurred would RE Tech be in contractual privity with the federal government and be able to directly invoice the federal government.

80.     RE Tech, by and through its owner, Ms. Cloutier, did not trust JDM, by and through its owner, Mr. Klein, to pay RE Tech for work RE Tech performed. Thus, Agreement Section 6(f) contemplated an arrangement wherein RE Tech would perform work under JDM's DOE contracts; RE Tech would invoice JDM for work RE Tech performed; JDM would, in turn, invoice the federal government; and the federal government's payment to JDM would go into a newly-created bank account opened in JDM's name but accessible exclusively by RE Tech, thereby removing JDM from the payment stream (and precluding JDM from interfering with that payment stream).

81.     JDM's counsel, on or about February 14, 2018, raised a concern that Agreement Section 6(f) potentially ran afoul of the Anti-Assignment Act, *see* 31 U.S.C. § 3727, including because the contemplated arrangement removed JDM from the payment process after its submission of a given invoice to the federal government.

82.     RE Tech did not agree that Agreement Section 6(f), as originally drafted, breached the Anti-Assignment Act, but agreed to amend Section 6(f) due to JDM's concerns.

83.     The Amendment wholly replaced Agreement Section 6(f). *See* Amendment § 1.

84.     The Amendment provides that RE Tech will perform the work under JDM's DOE contracts; RE Tech will invoice JDM; and JDM shall, within five business days of receipt of payment from the federal government, wire the entire payment to RE Tech. *See* Amendment, § 1.

85.     The Amendment did away with the concept of the federal government's payment going into a JDM account to which only RE Tech had access. Instead, the federal government's payment would go into a JDM account to which Mr. Klein had access, and RE Tech would have to rely upon JDM to make full and timely payments to RE Tech.

86.     RE Tech, however, in return for losing the protection offered by the original Section 6(f) (exclusive access to the bank account receiving federal government payments, thereby

precluding JDM from interfering with payments due to RE Tech), needed some other form of protection, as the monthly amount due from the federal government pursuant to JDM's DOE Better Buildings contract, which exceeds $300,000, is necessary for RE Tech to operate.

87.     The Amendment included both a late fee if a monthly payment was not timely made by JDM to RE Tech and interest on any amount not timely paid by JDM to RE Tech. *See* Amendment § 1(i)(C), (i)(D).

88.     The late fee and interest were designed to, among other things, address RE Tech's concern that JDM failing to pay RE Tech in a full and timely manner would interfere with RE Tech's stream of operating capital.

89.     The Amendment states that the fact that JDM may incur a late fee does not give JDM the right to make untimely payments and, in fact, a late payment constitutes a breach of the Agreement. *See* Amendment § 1(i)(C).

90.     The Amendment states that the fact that JDM may incur interest on a late payment does not give JDM the right to make untimely payments and, in fact, a late payment constitutes a breach of the Agreement. *See* Amendment § 1(i)(D).

91.     A few more details must be discussed in plain terms.

92.     The novation of JDM's GSA Schedule and federal contracts to RE Tech was, from RE Tech's perspective, an important and valuable aspect of any settlement deal. In order to make the settlement deal financially acceptable to RE Tech, the Agreement contained terms designed to ensure that JDM work towards the novation of its GSA Schedule and federal contracts to RE Tech.

93.     Specifically, the Agreement was drafted such that if JDM succeeded in causing the novation of its GSA Schedule and federal contracts to RE Tech, RE Tech would, absent certain circumstances, become obligated to pay JDM $200,000. *See*, Agreement, § 6(d).

94.     The $200,000 would be in addition to the significant sum of money that Ms. Cloutier left behind by withdrawing from JDM without seeking 49% of JDM's assets (which would have otherwise been due to Ms. Cloutier pursuant to her 49% interest in JDM).

95.     Conversely, if the novations do not occur, JDM and Mr. Klein will be obligated to pay $250,000 to RE Tech as a price adjustment, because, again, from RE Tech's perspective, the settlement deal loses much of its value absent the novations. *See* Agreement, § 6(e).

96.     RE Tech, because it was beginning to perform under JDM's federal contracts in February, 2018, would not invoice JDM for the February, 2018 work until March, 2018.

97.     JDM was, however, scheduled to receive a payment from the federal government in February, 2018 for work performed by JDM in January, 2018.

98.     JDM did not realize, during the bulk of the settlement agreement drafting and negotiation process, that the various drafts of the settlement agreement contemplated RE Tech buying JDM's accounts receivable due from the federal government, including the federal government payment that was to be paid in February, 2018 for work performed in January, 2018.

99.     JDM threatened to end settlement discussions on or about February 2, 2018 due to its realization that the settlement agreement iterations through that point in time contemplated RE Tech buying and receiving the money due to JDM from the federal government in February, 2018.

100.     This was not palatable to JDM because JDM would have expended funds servicing the government contracts in January, 2018 but would, instead of receiving payment for those efforts in February, 2018, have to convey the entire February, 2018 payment to RE Tech.

101.     Again, this was always set forth in the various settlement agreement drafts; JDM just did not understand, or pay attention to, the fact that RE Tech was purchasing this receivable.

102.     JDM's realization of the draft settlement agreement's treatment of the February, 2018 federal government payment to JDM, and corresponding threat to end settlement discussions, led to a last-minute change in the settlement agreement wherein JDM would receive the February, 2018 federal government payment, pay that entire sum to RE Tech, and RE Tech would, in turn, remit $190,000 of the sum to JDM (because $190,000 was the approximate amount that JDM spent on subcontractors working on the DOE project in January, 2018). *See* Agreement § 6(b)(i)(C).

103.     Separately, because RE Tech was taking over JDM's work on the DOE contracts as of February, 2018, RE Tech wanted to ensure that (a) the subcontractors would not complain that JDM had not fully and timely paid them and (b) RE Tech would not be responsible for any amount due to subcontractors for any point in time prior to February, 2018.

104.     The Agreement, at Section 6(f), defines three JDM subcontractors, Hand Crank Films, Inc. ("Hand Crank"), ICF International, Inc. ("ICF"), and Colehour + Cohen, Inc., as, collectively, the "DOE Subcontractors."

105.     The Agreement, at Section 6(i), requires JDM and Mr. Klein to "ensure that all payments due to the DOE Subcontractors for any and all goods, services, and work performed on or before January 31, 2018 has been or will be fully and timely paid by JDM and/or Mr. Klein."

106.     The Amendment, at Section 1(iv) (replacing Agreement Section 6(f)), states that "RE Tech will be responsible for paying ... the 'DOE Subcontractors' ... only for work the DOE Subcontractors perform or have performed on the JDM Department of Energy contract(s) on and after February 1, 2018."

107.     Those sections, taken together, are intended to, and, if followed, will, ensure that the DOE Subcontractors are paid in full by JDM for all work performed through January 31, 2018, and will, thereafter, be compensated by RE Tech for work performed in and after February, 2018.

**Returning to legalese: JDM breaches the Agreement in less than a month**

108.     Pursuant to Agreement Section 6(b)(i), RE Tech purchased some, but not all, of JDM's then-outstanding accounts receivable.

109.     Pursuant to Agreement Section 6(b)(i), RE Tech purchased "all JDM accounts receivable due from the United States Department of Energy at any time," except for the accounts receivable items due to JDM from the DOE specified on Exhibits 1 and 2 of the Agreement.

110.     Pursuant to Agreement Section 6(b)(i)(A), JDM agreed that RE Tech was purchasing $326,432.37 worth of accounts receivable that JDM expected to receive in February, 2018 from the DOE pursuant to work performed in connection with the Better Buildings initiative.

111.     The $326,432.37 worth of accounts receivable that JDM expected to receive in February, 2018 from the DOE arose from work JDM performed in or before January, 2018 in connection with the Better Buildings initiative.

112.     Pursuant to Agreement Section 6(b)(i)(B), JDM agreed that it would transfer to RE Tech the $326,432.37 worth of accounts receivable that JDM expected to receive in February, 2018 from the DOE pursuant to work performed in connection with the Better Buildings initiative.

113.     Pursuant to Agreement Section 6(b)(i)(C), RE Tech agreed that it would, upon receipt from JDM of the $326,432.37 worth of accounts receivable that JDM received in February, 2018 from the DOE pursuant to work performed in connection with the Better Buildings initiative, make a one-time payment of $190,000 to JDM.

114.     RE Tech, through counsel, on February 20, 2018, provided JDM, through counsel, with RE Tech's bank wiring information.

115.     RE Tech, through counsel, specifically reminded JDM, through counsel, that the entire payment to JDM from the DOE pursuant to work performed in connection with the Better

Buildings initiative was required, per the Agreement, to be transferred to RE Tech.

116.      JDM received $326,432.37 on February 23, 2018 pursuant to work performed in connection with the DOE's Better Buildings initiative.

117.      JDM did not transfer to RE Tech the entire $326,432.37 received by JDM on February 23, 2018.

118.      JDM, on February 26, 2018, instead of adhering to the terms of the Agreement, which required JDM to transfer the entire $326,432.37 to RE Tech, after which RE Tech would pay $190,000 to JDM, transferred only $136,432.37 to RE Tech.

119.      Thus, JDM was in breach of the Agreement less than three weeks after entering into the Agreement.

120.      To sum up the foregoing: JDM did work for the DOE in or before January, 2018; JDM was supposed to be paid for that work in February, 2018; JDM, upon receipt of the payment in February, 2018, was supposed to transfer the entire payment to RE Tech because that payment was part of JDM's accounts receivables that RE Tech purchased pursuant to the Agreement; RE Tech was then to transfer $190,000 of that payment back to JDM; and JDM, instead of following that process, simply withheld $190,000 of the money to be transferred to RE Tech, despite the Agreement's explicit and clear terms.

121.      JDM presumably chose to withhold $190,000, instead of transferring the entire $326,432.37 to RE Tech and awaiting RE Tech's payment of $190,000, because of Mr. Klein's distrust that RE Tech would pay JDM the $190,000.

122.      RE Tech, through counsel, informed JDM, through counsel, that JDM's failure to adhere to the terms of Agreement Section 6(b)(i)(C) constituted a breach of the Agreement.

123.     RE Tech, by counsel, informed JDM, by counsel, on March 6, 2018, that, "RE Tech has zero faith in your client's intent to adhere to the contract's terms, largely due to your client's breach of the Agreement on February 26, 2018."

124.     The foregoing is important insofar as it foreshadows JDM's subsequent breaches of the Agreement and highlights Mr. Klein's disregard for contractual obligations.

## RE Tech begins performing work on the DOE contracts

125.     The foregoing section dealt with the payment due to JDM for work JDM performed in January, 2018. This section addresses payments due to JDM for work RE Tech performed in February, 2018 on JDM's DOE contracts, payments which JDM was bound, but failed, to pay in full to RE Tech.

126.     Pursuant to Agreement Section 6(b)(ii)(A), RE Tech purchased from JDM, "all JDM contracts with any current or prospective JDM client or customer ... including, without limitation ... JDM's United States General Services Administration ('GSA') Multiple Award Schedule ('GSA Schedule'), and any and all contracts awarded under, in connection with, or in any way to related to JDM'S GSA Schedule."

127.     Pursuant to Section 6(c), JDM and Mr. Klein agreed that they, "will use their best efforts, and will cooperate and coordinate in good faith with RE Tech, to cause the novation to RE Tech of (i) JDM's GSA Schedule, (ii) any and all contracts awarded under, in connection with, or in any way to related to, JDM'S GSA Schedule, (iii) JDM's contract(s) (including, for purposes of clarity, any task order) with the Department of Energy (including, without limitation, any division, agency, branch, or office thereof), and (iv) JDM's contract(s) (including, for purposes of clarity, any task order) with the Environmental Protection Agency (including, without limitation,

any division, agency, branch, or office thereof), and sign such further documentation as may be desired or necessary to effect such novations."

128.     Pursuant to Agreement Section 6(f), and, as of March 15, 2018, Amendment Section 1, "RE Tech Shall [sic], beginning on, or retroactive to, February 1, 2018, service [the] Department of Energy contract(s) as JDM's assign and subcontractor utilizing RE Tech employees and/or subcontractors to perform all work on said Department of Energy contracts ...."

129.     RE Tech, beginning in February, 2018, performed all of the work on JDM's current contract(s) with the Department of Energy that are, by the Agreement, intended to be novated to RE Tech, as required by the Agreement and Amendment.

**JDM fails to fully and timely pay RE Tech for the February, 2018 DOE BB invoice**

130.     RE Tech, on March 1, 2018, transmitted to JDM RE Tech's $326,432.37 invoice for RE Tech's February, 2018 work on the DOE Better Buildings contract.

131.     A true and accurate copy of the March 1, 2018 cover e-mail from RE Tech, by counsel, to JDM, by counsel, is attached hereto as **Exhibit 6**.

132.     A true and accurate copy of RE Tech's March 1, 2018 invoice to JDM for RE Tech's February, 2018 DOE Better Buildings-related work is attached hereto as **Exhibit 7**.

133.     A true and accurate copy of the March 1, 2018 spreadsheet that RE Tech prepared for JDM to utilize in connection with seeking payment from the federal government for RE Tech's February, 2018 work on the DOE Better Buildings contract is attached hereto as **Exhibit 8**.

134.     JDM, in March, 2018, invoiced the federal government in the amount of $326,432.37 for the work RE Tech performed in February, 2018 as JDM's subcontractor in connection with JDM's DOE Better Buildings contract.

135.      JDM, pursuant to its March, 2018 invoice to the federal government, received a $326,432.37 payment from the federal government on March 19, 2018.

136.      Pursuant to Amendment Section 1(iii), JDM was required to transmit the entire $326,432.37 to RE Tech on or before March 26, 2018, which was five business days after JDM's March 19, 2018 receipt of the $326,432.37.

137.      JDM's obligation to pay to RE Tech all amounts received from the federal government that JDM received on March 19, 2018 also arises under Agreement Section 6(b).

138.      JDM failed to timely pay RE Tech the $326,432.37 due to RE Tech pursuant to RE Tech's March 1, 2018 invoice to JDM.

139.      RE Tech, on April 3, 2018, by counsel, transmitted notice to JDM, by counsel, that the $326,432.37 payment due from JDM to RE Tech pursuant to RE Tech's March 1, 2018 invoice to JDM for RE Tech's February, 2018 DOE Better Buildings-related work was overdue.

140.      A true and accurate copy of the April 3, 2018 e-mail with attachments is attached hereto as **Exhibit 9**.

141.      The e-mail states, in part, as follows:

> Based on historic payment schedules, the most recent DOE Better Buildings payment of $326,432.37 was paid to JDM more than five (5) business days ago. Your client presumably realizes that the date upon which the DOE Better Buildings payment was made to JDM is not confidential, is public information that RE Tech can easily determine, and is a fact that JDM cannot obfuscate. Pursuant to Section 6(f)(iii)(C) of the settlement agreement, as amended (please see amendment attached hereto), JDM is late in making the requisite payment.
>
> As set forth in the settlement agreement amendment, JDM, in addition to the $326,342.37, also 326,432.37owes RE Tech interest at the rate of 18%, which compounds daily, and a late fee of three percent (3%) of the amount of the payment from the Department of Energy, i.e., $9,792.97.
>
> ....

Please ensure that JDM immediately transmits to RE Tech the DOE Better Buildings payment, including requisite interest, and the late fee. I am attaching hereto RE Tech's wire information (which was previously provided by e-mail).

142.     JDM wired $104,894.02 to RE Tech on April 12, 2018.

143.     In other words, JDM shorted RE Tech by $221,538.35.

144.     JDM, through counsel, transmitted an e-mail to RE Tech, through counsel, on April 12, 2018 stating, in part, as follows:

By now RE Tech should have received a wire transfer from JDM in the amount of $104,894.02. This represents JDM's payment on RE Tech's invoice for February work on DOE Task Order DE DT0009089, the late payment penalty provided for in the First Amendment to the Settlement Agreement, the interest accrued to date on the amount paid today, and reimbursement for the Dimension Data bill, less several offsets. The penalty was calculated as $9792.96 (3% of $326,432) and the accrued interest was calculated as $161/day for 17 days. The principal offset is the $200,000 that will be due to JDM when the novation request is approved and DOE Task Order DE-DT0009089 is extended. Based on what we've heard from DOE, we expect this to happen soon. Mr. Klein anticipates receiving an update from Synthia Archuletta on Tuesday. In the event the novation is not approved or DOE Task Order DE-DT0009089 is extended, JDM intends to pay to RE Tech the retained $200,000, plus the interest accrued on that amount from the date the payment on RE Tech's invoice was due.

145.     The late fee JDM agreed to pay pursuant to Amendment Section 1(iii)(C) is not a penalty.

146.     JDM, by withholding $200,000 from the amount due to RE Tech pursuant to RE Tech's invoice for February work on DOE Task Order DE DT0009089, breached Amendment Section 1, which requires that the full sum JDM received from the federal government ($326,342.37) be paid to RE Tech.

147.     JDM, by withholding $200,000 from the amount due to RE Tech pursuant to RE Tech's invoice for February work on DOE Task Order DE DT0009089, also breached Agreement Section 6(b), which requires that the full sum JDM received from the federal government ($326,342.37) be paid to RE Tech.

148.     Neither the Agreement nor the Amendment allow JDM to apply offsets to amounts due to RE Tech.

149.     RE Tech did not, when JDM withheld the $200,000 "offset" referenced in the April 12, 2018 e-mail, owe JDM $200,000.

150.     JDM appears to believe, based on its assumption that the federal government is close to approving the novation of certain contracts from JDM to RE Tech, that (a) the various contingencies set forth in Agreement Section 6(d) relating to novations are about to occur, and (b), pursuant to Agreement Section 6(d), RE Tech will soon owe $200,000 to JDM.

151.     JDM, instead of awaiting the occurrence of the contingencies set forth in Agreement Section 6(d) and then awaiting payment from RE Tech pursuant to Agreement Section 6(d), decided instead to withhold $200,000 of money due to RE Tech.

152.     JDM intends to use the wrongfully-withheld $200,000 of RE Tech's money to, in essence, pay itself whenever JDM unilaterally decides that the contingencies in Agreement Section 6(d) have been fulfilled.

153.     As with the February breach of the Agreement, Mr. Klein and JDM, instead of paying RE Tech and relying upon RE Tech to abide by the Agreement's terms for any payments due to JDM, chose to withhold RE Tech's money in order to ensure that JDM can use RE Tech's money to pay itself.

154.     This is a breach of the Agreement, as amended by the Amendment.

155.      To be clear, what JDM did on February 26, 2018 and then again on April 12, 2018 is not offsetting.

156.      RE Tech does not, as of the date of the filing of this Complaint, owe the $200,000 payment to JDM described in Agreement Section 6(d).

157.      The $200,000 is not owed by RE Tech to JDM, including because the contingencies in Agreement Section 6(d) have not, as of the date of the filing of this Complaint, yet occurred.

158.      JDM's counsel's e-mail of April 12, 2018 further stated:

The other offsets are as follows:

•      $11,369.72 for 50% of the costs of Farshid Hosseini's salary and benefits from February 4 through April 6. The final numbers on this need to be confirmed by JDM's accountant, and this amount does not include employer paid health insurance for Mr. Hosseini – we'll let you know if there's any adjustment.

•      $10,957.81 for JDM's labor costs associated with the DOE task orders from February 1 through 4. The Settlement Agreement requires RE Tech to perform these task orders commencing February 1 and RE Tech invoiced JDM for the full month, but the personnel performing these task orders did not resign from JDM and start working at RE Tech until February 5. Because JDM performed the task orders for the first few days of February, RE Tech is not owed the full amount for the month. The numbers for this offset came from calculations performed by Chelsea Wever before she left JDM. This number is quite favorable to RE Tech: JDM could have simply prorated the amount due based on the number of days of performance, adjusting the total amount down by 14%.

•      $12,107.89 for the Hand Crank Films February 6 invoice. The February 6 invoice Hand Crank Films submitted to RE Tech was not for work performed prior to February 1, but rather was seeking advance payment for work performed on or after February 1 (in addition to the $59,000 advance JDM already paid it). Because RE Tech is responsible for task order performance from that date forward, the Hand Crank invoice is RE Tech's responsibility. However, in order to mitigate risk to the novation, JDM paid that invoice today on RE Tech's behalf.

159.     Each of these additional "offsets," which are really just JDM helping itself to RE Tech's money instead of asking RE Tech to pay JDM for these items, is impermissible.

160.     A true and accurate copy of the February 6, 2018 Hand Crank invoice referenced in JDM's counsel's April 12, 2018 e-mail is attached hereto as **Exhibit 10**.

161.     A true and accurate copy of a February 5, 2018 Hand Crank e-mail to JDM is attached hereto as **Exhibit 11**.

162.     A true and accurate copy of an April 3, 2018 Hand Crank e-mail to JDM is attached hereto as **Exhibit 12**.

163.     It is worthwhile to explain the math underlying JDM's counsel's April 12, 2018 e-mail, which is easiest to explain in table format. The table regarding the math underlying JDM's counsel's April 12, 2018 e-mail, which takes up the next two pages, follows:

**[Table appears on pages 23 and 24]**

| Amount | JDM's explanation for the amount | RE Tech's position on the amount |
|---|---|---|
| $326,342.37 | This is the amount of RE Tech's March 1, 2018 invoice to JDM. JDM invoiced the federal government, and received, on March 19, 2018, a $326,342.37 payment. | Pursuant to Agreement § 6(b) and Amendment § 1(iii), this entire amount was due to be paid by JDM to RE Tech no later than March 26, 2018. |
| +$367.05 | JDM paid RE Tech $367.05 for a March 1, 2018 invoice in that amount (the "Dimension Data bill" referenced in JDM's counsel's e-mail). | RE Tech was owed this money and agrees that JDM should have paid it to RE Tech. |
| - $200,000 | JDM is withholding the $200,000 because JDM assumes that novation will shortly occur and JDM does not trust that RE Tech will, when the contingencies set forth in Agreement § 6(d) occur, pay the $200,000 to JDM. | JDM has no right to withhold money due to RE Tech. JDM may not claim a contractual right to a $200,000 payment from RE Tech until the contingencies set forth in Agreement § 6(d) occur. |
| +$9,792.96 | JDM explains this as the 3% late fee due because the March 1, 2018 invoice was not timely paid to RE Tech. | RE Tech agrees that, pursuant to Amendment § 1(iii)(C), the late fee was due to RE Tech. |
| +2,737.00 | JDM explains that this amount is the accrued interest on $326,342.37 at 18% for seventeen days (March 27 through April 12). | RE Tech agrees that, pursuant to Amendment § 1(iii)(D), the interest was due to RE Tech, but disagrees with the $2,737 figure; instead, because the interest is compounding, the amount due was $2,747.49. |
| -$11,369.72 | JDM subtracted from the $326,342.37 payment what it describes as "50% of the costs of Farshid Hosseini's salary and benefits from February 4 through April 6." | RE Tech disputes this "offset." Pursuant to Agreement § 3(e), RE Tech agreed to reimburse JDM for 50% of Mr. Hosseini's salary and benefits "within ten (10) business days of receipt of an invoice from JDM for such amount(s) ...." JDM did not invoice RE Tech and thereby obligate RE Tech to reimburse JDM for 50% of Mr. Hosseini's salary. Instead, JDM, without any sort of explanation (such as would be set forth on an invoice explaining whatever amount JDM invoiced to RE Tech), withheld money from RE Tech instead of invoicing RE Tech and awaiting payment. This is another instance where Mr. Klein decided that he preferred to breach the Agreement instead of risking, in his mind, RE Tech not paying JDM. |

| Amount | JDM's explanation for the amount | RE Tech's position on the amount |
|---|---|---|
| -$10,957.81 | JDM argues that RE Tech invoiced JDM for all of February, 2018, but that JDM paid for labor costs on the DOE Better Buildings contract between Thursday, February 1, 2018 and Sunday, February 4, 2018. (RE Tech took over on Monday, February 5, 2018.) Thus, JDM claims that it incurred $10,957.81 in labor costs over two business days; that RE Tech was supposed to service the DOE Better Buildings contract for all of February; and that JDM is, thus, entitled to withhold its (claimed) labor costs from the payment otherwise due to RE Tech pursuant to RE Tech's March 1, 2018 invoice to JDM. | RE Tech disputes this "offset." First, JDM has no right to offset amounts it claims to be due to JDM by withholding sums that are, pursuant to the Agreement, due to RE Tech. Second, pursuant to Amendment § 1(i), RE Tech agreed to service the DOE contracts using "RE Tech employees and/or subcontractors." No JDM personnel working on the DOE contracts between February 1, 2018 and February 4, 2018 were either RE Tech employees or RE Tech subcontractors. |
| -$12,107.89 | As explained above, JDM and Mr. Klein agreed, at Agreement § 6(i), to pay all of the DOE Subcontractors, which includes Hand Crank, in full for work performed on the DOE contracts through January 31, 2018. Hand Crank submitted an invoice to JDM on February 6, 2018 in the amount of $12,107.89 for work performed through January 31, 2018. *See* Exhibit 10; *see also*, Exhibits 11 and 12. JDM disputed that the invoice was for work performed through January 31, 2018, but paid the invoice and then "offset" the amount of JDM's payment to Hand Crank from the April 12, 2018 payment from JDM to RE Tech. | RE Tech disputes this "offset." JDM and Mr. Klein agreed, at Agreement § 6(i), to pay all of the DOE Subcontractors, which includes Hand Crank, in full for work performed on the DOE contracts through January 31, 2018. The February 6, 2018 Hand Crank invoice to JDM is for work performed through January 31, 2018. If JDM and Mr. Klein dispute that amount, they can choose to address that dispute with Hand Crank, but they may not pay Hand Crank and then charge RE Tech for the disputed amount, both because this is not RE Tech's dispute and because Amendment § 1(iii) requires that JDM pay the entire $326,342.37 payment from the federal government over to RE Tech. |
| $104,803.96 | This is the amount that JDM, through counsel, claims, via the math set forth in JDM's counsel's April 12, 2018 e-mail, JDM should have paid to RE Tech. JDM paid $104,894.02 so, by JDM's (incorrect) analysis, JDM overpaid RE Tech by $90.06. | JDM, pursuant to Amendment § 1(iii), was required to pay to RE Tech on or before March 26, 2018 the entire $326,342.37 payment that JDM received from the federal government on March 19, 2018. |

164.     JDM owes RE Tech the entire $326,342.37 due to RE Tech pursuant to RE Tech's March 1, 2018 invoice to JDM and the federal government's March 19, 2018 payment of $326,342.37 to JDM.

165.     JDM breached the Agreement, as amended by the Amendment, by tardily paying RE Tech on April 12, 2018 and by withholding $200,000 from the $326,342.37 payment that was due to RE Tech no later than March 26, 2018.

166.     JDM breached the Agreement, as amended by the Amendment, by tardily paying RE Tech on April 12, 2018 and by withholding $11,369.72 from the $326,342.37 payment that was due to RE Tech no later than March 26, 2018.

167.     JDM breached the Agreement, as amended by the Amendment, by tardily paying RE Tech on April 12, 2018 and by withholding $10,957.81 from the $326,342.37 payment that was due to RE Tech no later than March 26, 2018.

168.     JDM breached the Agreement, as amended by the Amendment, by tardily paying RE Tech on April 12, 2018 and by withholding $12,107.89 from the $326,342.37 payment that was due to RE Tech no later than March 26, 2018.

### JDM fails to fully and timely pay RE Tech for two DOE Appraisal and Finance invoices

169.     JDM, in January, 2018, performed work for the DOE pursuant to JDM's DOE Appraisal and Finance contract.

170.     JDM's payment from the federal government for its January, 2018 work on the DOE Appraisal and Finance contract was among the assets purchased by RE Tech via the Agreement. *See* Agreement § 6(b)(i); *cf.* Agreement, Exhibits 1 and 2.

171.     Thus, JDM was contractually obligated to transfer to RE Tech the payment JDM received from the federal government pursuant to JDM's January, 2018 work on the DOE

Appraisal and Finance contract.

172.        RE Tech, by counsel, on March 1, 2018, transmitted to JDM, by counsel, a $10,000 invoice seeking payment to RE Tech of the payment due from the federal government to JDM pursuant to JDM's January, 2018 work on the DOE Appraisal and Finance contract.

173.        A true and accurate copy of RE Tech's March 1, 2018 invoice seeking payment to RE Tech of the payment due from the federal government to JDM pursuant to JDM's January, 2018 work on the DOE Appraisal and Finance contract is attached hereto as **Exhibit 13**. (hereinafter, the "RE Tech 13118 A&F Invoice").

174.        RE Tech, as of February, 2018, took over servicing JDM's DOE Appraisal and Finance contract.

175.        RE Tech, by counsel, on March 1, 2018, transmitted to JDM, by counsel, a $10,000 invoice seeking payment for RE Tech's February, 2018 work on the DOE Appraisal and Finance contract.

176.        A true and accurate copy of RE Tech's March 1, 2018 invoice to JDM for RE Tech's February, 2018 DOE Appraisal and Finance-related work is attached hereto as **Exhibit 14** (hereinafter, the "RE Tech 22818 A&F Invoice").

177.        A true and accurate copy of the March 1, 2018 cover e-mail from RE Tech, by counsel, to JDM, by counsel, regarding both the RE Tech 13118 A&F Invoice and the RE Tech 22818 A&F Invoice is attached hereto as **Exhibit 15**.

178.        JDM, in March, 2018, invoiced the federal government in the amount of $10,000 for the payment due from the federal government to JDM pursuant to JDM's January, 2018 work on the DOE Appraisal and Finance contract.

179.     JDM, in March, 2018, invoiced the federal government in the amount of $10,000 for work performed by RE Tech in February, 2018 in connection with JDM's DOE Appraisal and Finance contract.

180.     JDM, on March 27, 2018, received $10,000 from the federal government pursuant to work performed by JDM in January, 2018 in connection with JDM's DOE Appraisal and Finance contract.

181.     JDM, on March 27, 2018, received $10,000 from the federal government pursuant to work performed by RE Tech in February, 2018 in connection with JDM's DOE Appraisal and Finance contract.

182.     Pursuant to Agreement Section 6(b) and Amendment Section 1(iii), JDM was required to transmit the entire $20,000 to RE Tech on or before April 2, 2018, which was five business days after JDM's March 27, 2018 receipt of the $20,000.

183.     JDM failed to timely pay RE Tech the $10,000 due to RE Tech pursuant to the RE Tech 13118 A&F Invoice.

184.     JDM failed to timely pay RE Tech the $10,000 due to RE Tech pursuant to the RE Tech 22818 A&F Invoice.

185.     As of the date of the filing of this Complaint, JDM has not paid to RE Tech any portion of the amount due from JDM to RE Tech pursuant to the RE Tech 13118 A&F Invoice.

186.     As of the date of the filing of this Complaint, JDM has not paid to RE Tech any portion of the amount due from JDM to RE Tech pursuant to the RE Tech 22818 A&F Invoice.

187.     JDM's failure to timely pay RE Tech the $10,000 due to RE Tech pursuant to the RE Tech 13118 A&F Invoice is a breach of Agreement Section 6(b) and Amendment Section 1(iii).

188.     JDM, in addition to the $10,000 due to RE Tech pursuant to the RE Tech 13118 A&F Invoice, is liable to RE Tech for a $300.00 late fee pursuant to Amendment Section 1(iii)(C).

189.     JDM, in addition to the $10,000 due to RE Tech pursuant to the RE Tech 13118 A&F Invoice, is liable to RE Tech for interest pursuant to Amendment Section 1(iii)(D).

190.     JDM's failure to timely pay RE Tech the $10,000 due to RE Tech pursuant to the RE Tech 22818 A&F Invoice is a breach of Agreement Section 6(b) and Amendment Section 1(iii).

191.     JDM, in addition to the $10,000 due to RE Tech pursuant to the RE Tech 22818 A&F Invoice, is liable to RE Tech for a $300.00 late fee pursuant to Amendment Section 1(iii)(C).

192.     JDM, in addition to the $10,000 due to RE Tech pursuant to the RE Tech 22818 A&F Invoice, is liable to RE Tech for interest pursuant to Amendment Section 1(iii)(D).

## JDM fails to fully and timely pay a DOE Subcontractor

193.     The Agreement, at Section 6(f), defines three JDM subcontractors, Hand Crank ICF, and Colehour + Cohen, Inc., as, collectively, the "DOE Subcontractors."

194.     The Agreement, at Section 6(i), requires JDM and Mr. Klein to "ensure that all payments due to the DOE Subcontractors for any and all goods, services, and work performed on or before January 31, 2018 has been or will be fully and timely paid by JDM and/or Mr. Klein."

195.     JDM owes ICF $126,153.50 for goods, services, and work performed on or before January 31, 2018 in connection with ICF's performance of goods, services, and work as JDM's subcontractor on the DOE Better Buildings contract.

196.     ICF invoiced JDM for the $126,153.50.

197.     JDM had not, as of February 4, 2018 (the Agreement's Effective Date), paid the $126,153.50 due to ICF.

198.     JDM has not, as of the date of the filing of this Complaint, paid the $126,153.50 due to ICF.

199.     JDM did not fully pay ICF the $126,153.50 due to ICF.

200.     JDM did not timely pay ICF the $126,153.50 due to ICF.

201.     As noted above, the requirement that JDM fully and timely pay the DOE Subcontractors for goods, services, and work performed on or before January 31, 2018 was a material term of the Agreement, including because RE Tech, knowing that it would, beginning in February, 2018, be utilizing the DOE Subcontractors as RE Tech's subcontractors, wished to ensure that the DOE Subcontractors did not stop work or otherwise create servicing problems in connection with RE Tech's performance of the DOE Better Buildings contract.

### JDM fails to surrender to RE Tech materials owned by RE Tech

202.     RE Tech, pursuant to Agreement Section 6(b)(iii), purchased from JDM "all electronic and other intangible JDM assets, including, without limitation, ... electronic files of any and all types and nature ...."

203.     RE Tech, pursuant to Agreement Section 6(b)(iv), purchased from JDM "any physical assets (A) located outside of the United States Virgin Islands at any time on or after January 25, 2018," and, "for purposes of clarity, any JDM physical assets ... currently held by a third party outside of the United States Virgin Islands ... shall be immediately conveyed to RE Tech ...."

204.     JDM's 2016 federal tax return (including all required schedules and forms) was due to be filed with the Internal Revenue Service no later than January 31, 2018.

205.     JDM timely filed its 2016 federal tax return (including all required schedules and forms).

206.    The Agreement's Effective Date is February 4, 2018.

207.    Thus, at the time that RE Tech purchased JDM's electronic files and physical assets, electronic and physical copies of JDM's 2016 federal tax return (including all required schedules and forms) became RE Tech's assets.

208.    Further, at the time that RE Tech purchased JDM's electronic files and physical assets, electronic and physical copies of the tax workbooks (and drafts thereof) utilized in connection with the preparation of JDM's 2016 federal tax return (including all required schedules and forms) became RE Tech's assets.

209.    JDM possesses an electronic copy of JDM's 2016 federal tax return (including all required schedules and forms).

210.    JDM may possess an electronic copy of the tax workbooks (and drafts thereof) utilized in connection with the preparation of JDM's 2016 federal tax return (including all required schedules and forms).

211.    JDM's accountant, who is located in the Commonwealth of Pennsylvania, possesses an electronic copy of JDM's 2016 federal tax return (including all required schedules and forms).

212.    JDM's accountant, who is located in the Commonwealth of Pennsylvania, possesses an electronic copy of the tax workbooks (and drafts thereof) utilized in connection with the preparation of JDM's 2016 federal tax return (including all required schedules and forms).

213.    JDM's accountant may possess a physical copy of JDM's 2016 federal tax return (including all required schedules and forms).

214.    JDM's accountant, who is located in the Commonwealth of Pennsylvania, may possess a physical copy of the tax workbooks (and drafts thereof) utilized in connection with the

preparation of JDM's 2016 federal tax return (including all required schedules and forms).

215.     JDM's accountant is JDM's agent and JDM is authorized to direct its agent to provide materials which were previously owned by JDM, but are now owned by RE Tech, to RE Tech.

216.     RE Tech, by counsel, on March 21, 2018, stated to JDM, by counsel, as follows:

> I do not understand there to be any debate that JDM's intangible assets, as they existed on February 4, 2018, were purchased by RE Tech. Those assets included "electronic files of any and all types and nature ...." JDM owned laptops, including JDM laptops used by John Klein, Emily Wilcox, Paul Wyatt, and Jessie Ralph, as well as desktop computers, on February 4, 2018. All data, including electronic files (e.g., JDM contracts, JDM contacts, JDM tax filings, JDM tax workbooks), on those laptops and desktops belongs to RE Tech. On the subject of taxes, JDM's 2016 tax filings were due on January 31, 2018, and all of the documentation related to that tax submission (including drafts, workbooks, and copies of the return) was purchased by RE Tech, so please ensure that JDM understands that all such documentation must be included in what is sent to RE Tech. This is not an item that is going to fall between the cracks; RE Tech owns all of the documents (including drafts) and files relating to the 2016 tax return filed in January, 2018, and requires the immediate transmittal of all such documents and files to RE Tech.

217.     A true and accurate copy of the March 21, 2018 e-mail from RE Tech, by counsel, to JDM, by counsel, without attachments, is attached hereto as **Exhibit 16**.

218.     Despite the request for the materials, JDM did not provide RE Tech with the materials RE Tech purchased from JDM on February 4, 2018.

219.     RE Tech is contractually entitled to these materials without any need to explain why RE Tech requires JDM to convey to RE Tech materials now owned by RE Tech.

220.     That said, RE Tech requires JDM to convey to RE Tech JDM's 2016 federal tax return (including all required schedules and forms) and the tax workbooks (and drafts thereof) utilized in connection with the preparation of JDM's 2016 federal tax return (including all required

schedules and forms) for multiple reasons, including that RE Tech, based on balance sheets JDM submitted to the federal government in connection with the proposed novation of JDM's GSA Schedule and federal contracts to RE Tech, must review JDM's 2016 federal tax return and underlying tax workbooks (and drafts thereof).

221.     JDM and Mr. Klein have failed to provide to RE Tech other assets RE Tech purchased on February 4, 2018, including, without limitation, electronic data residing on the JDM laptop Mr. Klein was utilizing as of February 4, 2018.

## COUNT I: BREACH OF CONTRACT
### The March, 2018 DOE BB payment

222.     Paragraphs 1-221 are incorporated herein in full by reference as are all subsequent paragraphs.

223.     RE Tech, on March 1, 2018, transmitted to JDM RE Tech's $326,432.37 invoice for RE Tech's February, 2018 work on the DOE Better Buildings contract. *See,* Exhibits 6-8.

224.     JDM, in March, 2018, invoiced the federal government in the amount of $326,432.37 for the work RE Tech performed in February, 2018 as JDM's subcontractor in connection with JDM's DOE Better Buildings contract.

225.     JDM, pursuant to its March, 2018 invoice to the federal government, received a $326,432.37 payment from the federal government on March 19, 2018.

226.     Pursuant to Agreement Section 6(b) and Amendment Section 1(iii), JDM was required to transmit the entire $326,432.37 to RE Tech on or before March 26, 2018.

227.     JDM failed to timely pay RE Tech the $326,432.37 due to RE Tech pursuant to RE Tech's March 1, 2018 invoice to JDM.

228.     Instead, JDM paid RE Tech $104,894.02.

229.     JDM improperly withheld $221,538.35 from its (untimely) April 12, 2018 payment to RE Tech.

230.     JDM has no right, under the Agreement or the Amendment, to offset amounts it claims RE Tech owes to JDM from amounts due from JDM to RE Tech.

231.     JDM was not entitled to withhold $200,000 from the April 12, 2018 payment to RE Tech, including because RE Tech did not, pursuant to Agreement Section 6(d), owe $200,000 to JDM on April 12, 2018.

232.     JDM was not entitled to withhold $11,369.72 from the April 12, 2018 payment to RE Tech, including because, pursuant to Agreement Section 3(e), RE Tech is not required to reimburse JDM for 50% of Mr. Hosseini's salary and benefits until ten business days after RE Tech receives an invoice from JDM for such amounts, and JDM did not invoice RE Tech for 50% of Mr. Hosseini's salary and benefits on or before April 12, 2018 (and has not done so through the date of the filing of this Complaint).

233.     JDM was not entitled to withhold $10,957.81 from the April 12, 2018 payment to RE Tech, including because no JDM personnel working on the DOE contracts between February 1, 2018 and February 4, 2018 were either RE Tech employees or RE Tech subcontractors.

234.     JDM was not entitled to withhold $12,107.89 from the April 12, 2018 payment to RE Tech, including because (a) the $12,107.89 that JDM paid to Hand Crank arose from an invoice that specified that the $12,107.89 charged to JDM arose from work performed by Hand Crank for JDM on or before January 31, 2018, (b) JDM and Mr. Klein agreed, at Agreement Section 6(i), to pay all of the DOE Subcontractors, which includes Hand Crank, in full for work performed on the DOE contracts through January 31, 2018, and (c) regardless of whether JDM disputes Hand

Crank's invoice, JDM and Mr. Klein have no right, under the Agreement, to pay Hand Crank and then charge RE Tech for the disputed amount.

235.     JDM is liable to RE Tech for the $221,538.35 wrongfully withheld from the April 12, 2018 payment from JDM to RE Tech.

236.     JDM is also liable to RE Tech in the amount of $10.49 because JDM paid RE Tech $2,737 in interest on April 12, 2018 when, in fact, the interest due on April 12, 2018 was $2,747.49.

237.     Pursuant to Amendment Section 1(iii)(D), JDM is liable to RE Tech for interest, beginning on April 13, 2018, on the $221,538.35 wrongfully withheld.

238.     RE Tech is also entitled to an award of attorney's fees pursuant to Agreement Section 17(c).

## COUNT II: BREACH OF CONTRACT
## The RE Tech 13118 A&F Invoice

239.     Paragraphs 1-238 are incorporated herein in full by reference as are all subsequent paragraphs.

240.     RE Tech, by counsel, on March 1, 2018, transmitted to JDM, the RE Tech 13118 A&F Invoice (Exhibit 13).

241.     JDM, in March, 2018, invoiced the federal government in the amount of $10,000 for the payment due from the federal government to JDM pursuant to JDM's January, 2018 work on the DOE Appraisal and Finance contract.

242.     JDM, on March 27, 2018, received $10,000 from the federal government pursuant to work performed by JDM in January, 2018 in connection with JDM's DOE Appraisal and Finance contract.

243.     Pursuant to Agreement Section 6(b) and Amendment Section 1(iii), JDM was required to transmit the entire $10,000 to RE Tech on or before April 2, 2018, which was five

business days after JDM's March 27, 2018 receipt of the $10,000.

244.        JDM failed to timely pay RE Tech the $10,000 due to RE Tech pursuant to the RE Tech 13118 A&F Invoice.

245.        JDM's failure to timely pay RE Tech the $10,000 due to RE Tech pursuant to the RE Tech 13118 A&F Invoice is a breach of Agreement Section 6(b) and Amendment Section 1(iii), and JDM is liable to RE Tech in said amount.

246.        JDM, in addition to the $10,000 due to RE Tech pursuant to the RE Tech 13118 A&F Invoice, is liable to RE Tech for a $300.00 late fee pursuant to Amendment Section 1(iii)(C).

247.        JDM, in addition to the $10,000 due to RE Tech pursuant to the RE Tech 13118 A&F Invoice, is liable to RE Tech for interest pursuant to Amendment Section 1(iii)(D).

248.        RE Tech is also entitled to an award of attorney's fees pursuant to Agreement Section 17(c).

### COUNT III: BREACH OF CONTRACT
### The RE Tech 22818 A&F Invoice

249.        Paragraphs 1-248 are incorporated herein in full by reference as are all subsequent paragraphs.

250.        RE Tech, by counsel, on March 1, 2018, transmitted to JDM, the RE Tech 22818 A&F Invoice (Exhibit 14).

251.        JDM, in March, 2018, invoiced the federal government in the amount of $10,000 for work performed by RE Tech in February, 2018 in connection with JDM's DOE Appraisal and Finance contract.

252.        JDM, on March 27, 2018, received $10,000 from the federal government pursuant to work performed by RE Tech in February, 2018 in connection with JDM's DOE Appraisal and Finance contract.

253.     Pursuant to Agreement Section 6(b) and Amendment Section 1(iii), JDM was required to transmit the entire $10,000 to RE Tech on or before April 2, 2018, which was five business days after JDM's March 27, 2018 receipt of the $10,000.

254.     JDM failed to timely pay RE Tech the $10,000 due to RE Tech pursuant to the RE Tech 22818 A&F Invoice.

255.     JDM's failure to timely pay RE Tech the $10,000 due to RE Tech pursuant to the RE Tech 22818 A&F Invoice is a breach of Agreement Section 6(b) and Amendment Section 1(iii).

256.     JDM, in addition to the $10,000 due to RE Tech pursuant to the RE Tech 22818 A&F Invoice, is liable to RE Tech for a $300.00 late fee pursuant to Amendment Section 1(iii)(C).

257.     JDM, in addition to the $10,000 due to RE Tech pursuant to the RE Tech 22818 A&F Invoice, is liable to RE Tech for interest pursuant to Amendment Section 1(iii)(D).

258.     RE Tech is also entitled to an award of attorney's fees pursuant to Agreement Section 17(c).

### COUNT IV: BREACH OF CONTRACT
### Breach of agreement to pay DOE Subcontractors

259.     Paragraphs 1-258 are incorporated herein in full by reference as are all subsequent paragraphs.

260.     The Agreement, at Section 6(i), requires JDM and Mr. Klein to "ensure that all payments due to the DOE Subcontractors for any and all goods, services, and work performed on or before January 31, 2018 has been or will be fully and timely paid by JDM and/or Mr. Klein."

261.     JDM owes ICF, which is a DOE Subcontractor within the meaning of the Agreement, at least $126,153.50 for goods, services, and work performed on or before January 31, 2018.

262.     The failure of JDM and Mr. Klein to timely and fully pay ICF's pending invoice is a breach of the Agreement.

263.     RE Tech seeks judgment against JDM and Mr. Klein in the form of specific performance, such that JDM and Mr. Klein are ordered to fully compensate ICF for the entire amount due and owing to ICF pursuant to for goods, services, and work performed on or before January 31, 2018.

264.     In the alternative, RE Tech seeks judgment against JDM and Mr. Klein in the form of compensatory damages in the amount necessary to compensate ICF for goods, services, and work performed for JDM on or before January 31, 2018, such that RE Tech can remedy JDM's and Mr. Klein's breach of the Agreement by paying said amount to ICF.

265.     RE Tech is also entitled to an award of attorney's fees pursuant to Agreement Section 17(c).

## COUNT V: BREACH OF CONTRACT
### Failure to provide RE Tech with electronic, intangible, and physical assets

266.     Paragraphs 1-265 are incorporated herein in full by reference as are all subsequent paragraphs.

267.     RE Tech, pursuant to Agreement Section 6(b)(iii), purchased from JDM "all electronic and other intangible JDM assets, including, without limitation, ... electronic files of any and all types and nature ...."

268.     RE Tech, pursuant to Agreement Section 6(b)(iv), purchased from JDM "any physical assets (A) located outside of the United States Virgin Islands at any time on or after January 25, 2018," and, "for purposes of clarity, any JDM physical assets ... currently held by a third party outside of the United States Virgin Islands ... shall be immediately conveyed to RE Tech ...."

269.     JDM and Mr. Klein, including as described herein, have failed to provide to RE Tech all of the electronic, intangible, and physical assets purchased by RE Tech on February 4, 2018.

270.     RE Tech seeks judgment against JDM and Mr. Klein in the form of specific performance, such that JDM and Mr. Klein are ordered to provide to RE Tech all electronic, intangible, and physical assets purchased by RE Tech on February 4, 2018.

271.     RE Tech is also entitled to an award of attorney's fees pursuant to Agreement Section 17(c).

WHEREFORE, Plaintiff RE Tech Advisors, Inc. respectfully requests that judgment be entered in its favor in keeping with the allegations stated and relief requested in Counts I, II, III, IV, and V set forth herein, including, without limitation, compensatory damages (including, as appropriate, late fees and contract interest) as set forth in this Complaint and as otherwise proven at trial, specific performance, attorney's fees, costs, prejudgment interest, post-judgment interest, and such other relief as the Court deems fair and just.

DATED: April 15, 2018              RE TECH ADVISORS, INC.
                                   by Counsel


                                   _____
                                   Stephen D. Charnoff (VSB No. 65329)
                                   Jasmine G. Chalashtori (VSB No. 90615)
                                   REES BROOME, PC
                                   1900 Gallows Rd.
                                   Suite 700
                                   Tysons Corner, VA 22182
                                   (703) 790-6233 (telephone)
                                   (703) 356-0527 (facsimile)
                                   scharnoff@reesbroome.com
                                   jchalashtori@reesbroome.com